## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| CHARLES THOMPSON and DEBBIE THOMPSON, | ) ) ) | No. 2:11-cv-1170 |
| Plaintiffs, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| UFP EASTERN DIVISION, INC., | ) ) | |
| Defendant, | ) ) | |
| AND | ) ) | |
| UFP EASTERN DIVISION, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| CJT ENTERPRISES, INC. and LANDSTAR RANGER, INC., | ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

This matter is before the court on third-party defendants' motions for summary judgment. To the extent both motions request relief based on Rule 14, the court interprets the filings as motions to strike. For the reasons set forth below, the court denies CJT Enterprises, Inc.'s (CJT) and Landstar Ranger, Inc.'s (Landstar) motions to strike and Landstar's motion for summary judgment on UFP Eastern Division Inc.'s (UFP) contribution claim, but grants Landstar's motion on the indemnification claim.

## I.  PROCEDURAL BACKGROUND

Plaintiffs Charles and Debbie Thompson filed the instant suit in state court on April 7, 2011.  Defendants removed this case to federal court on May 16, 2011, based on diversity jurisdiction.  Plaintiffs filed an amended complaint on July 28, 2011, against defendants for negligence, strict liability, and loss of consortium.  On September 21, 2011, UFP filed an amended answer to plaintiffs' amended complaint, which contained a third-party complaint against CJT and Landstar.  CJT and Landstar answered and moved for summary judgment on April 13, 2012 and May 16, 2012, respectively.

## II.  FACTUAL BACKGROUND

Defendant UFP manufactures wooden pallets and ships them over state lines by truck.  UFP entered into a "Shipper/Broker Transportation Agreement" with third-party defendant Landstar, a transportation broker in September 2007.  Pursuant to that agreement, in January 2011, Landstar arranged for third-party defendant CJT, a motor carrier, to transport a load of UFP's pallets from Morristown, Tennessee to Hanahan, South Carolina.  CJT dispatched its driver, plaintiff Charles Thompson, to UFP's Morristown facility, and UFP loaded the CJT truck.

Upon reaching the warehouse in Hanahan on January 10, 2011, Thompson alleges that as he "opened the trailer door, pallets fell onto [him] and knocked him to the ground.  [He] was injured and lost consciousness and was transported to the emergency room."  Compl. ¶ 7.  He contends that straps which had been placed on the pallets by UFP broke, allowing the pallets to fall from the rear of the trailer.  Id. ¶ 9.  Thompson seeks to recover damages based on negligence and strict liability

theories and claims UFP is liable for his injuries caused by the circumstances under which the truck was loaded.

### III.   DISCUSSION

#### A.  Motions to Strike

Impleader is controlled by Rule 14(a) of the Federal Rules of Civil Procedure, which states, "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  The Rule also provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately."  Fed. R. Civ. P. 14(a)(4).  To the extent CJT and Landstar proceed under Rule 14(a), their motions will be treated as motions to strike.

"The district court is accorded wide discretion in determining whether to permit . . . third party procedure," McDonald v. Union Carbide Corp., 734 F.2d 182, 184 (5th Cir. 1984), however, "the third party claim must be 'derivative' of the plaintiff's claim."  Scott v. PPG Indus. Inc., No. 89-2362, 1990 WL 200655, at *3 (4th Cir. Dec. 13, 1990) (unpublished) (quoting Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstern Assoc., 117 F.R.D. 576, 578 (E.D. Va. 1987)).  In order for a claim to be derivative,

> First, the non-party must be potentially liable to the third party plaintiff.  Second, the non-party's liability must relate to the plaintiff's claim against the defendant/third party plaintiff such that the third party defendant's liability arises only if the defendant/third-party plaintiff is first held liable to plaintiff.

Tetra Tech EC/Tsoro Joint Venture v. Sam Temples Masonry, Inc., No. 10-1597, 2011 WL 1048964, at *3 (D.S.C. Mar. 21, 2011).

On the other hand, third party complaints are not permissible "merely because [the third-party defendant] may be liable to the plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 368 n.3 (1978).

> [A] third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, "It was him, not me." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part (one-half, if a joint tortfeasor) of anything I must pay plaintiff."

Watergate Landmark, 117 F.R.D. at 578.

### 1. CJT's Motion to Strike

From the outset, UFP denies any wrongdoing. In the alternative, however, UFP claims that CJT is either jointly or primarily responsible for the dangerous condition that resulted from the loading process. The Fourth Circuit in Franklin Stainless Corp. v. Marlo Transport Corp., 748 F.2d 865, 870 (4th Cir. 1984), held that claims for indemnification and contribution may be brought between an inland shipper and carrier and apportioned the duties between the two.

If UFP is found not liable to Thompson, UFP will have no grounds for suit against CJT. UFP's alternative claims for contribution and indemnification assert, "Not me. But if me, then him, too," not "It was him, not me," and thus, are derivative of Thompson's claims against UFP. See Watergate Landmark, 117 F.R.D. at 578. Thus, as a South Carolina district court has already noted, "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, [or] contribution,

4

express or implied warranty. . . ." Tetra Tech EC/Tsoro Joint Venture, 2011 WL 1048964, at *3 (emphasis added).  Therefore, the court denies CJT's motion to strike.

### 2. Landstar's Motion to Strike

Similarly, UFP claims that if it is liable to Thompson, its liability is only secondary to or partial with Landstar's liability.  UFP claims that Landstar was contractually bound to exercise due diligence in providing a carrier that would comply with the terms of its contract with UFP.  The contract states that the carrier (CJT) will be responsible for inspecting and testing the load even if UFP loaded the cargo, and requires Landstar to exercise due diligence to hire carriers that will comply with the law.  If Landstar did not exercise due diligence in hiring its carriers, Landstar potentially could be liable for the resulting dangerous situation.  UFP claims that the allegedly dangerous situation which provides the basis for plaintiffs' suit was created, at least in part, by Landstar's failure to fulfill its contractual duties to UFP.  Essentially, Landstar's liability only arises out of its duties to UFP, and is dependent on UFP being found liable to Thompson.  Based on the record before the court, UFP's claims against Landstar are derivative of plaintiffs' claims against UFP; therefore, the court denies Landstar's motion to strike.

### B. Landstar's Summary Judgment Claims

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that

there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Evidence should be viewed in the light most favorable to the nonmoving party and all justifiable inferences drawn in its favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A mere "scintilla" of evidence will not preclude summary judgment, however. Id. at 252.

First, Landstar argues UFP's claims against it are preempted by the Federal Aviation Administration Authorization Act (FAAAA), 108 Stat. 1605-06, 49 U.S.C. § 14501. The FAAAA preempts state law, regulation, and court created law that imposes duties on carriers. Smith v. Comair, Inc., 134 F.3d 254 (4th Cir. 1998). The FAAAA was promulgated in order to protect the "competitive market forces" from state regulation. See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370-71 (2008) (finding that the FAAAA preempted two Maine state law provisions regulating delivery procedures for truck shipments of tobacco); see, e.g., Huntington Operating Corp. v. Sybonney Exp., Inc., No. 08-0781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2011) (finding that a plaintiff's contract based claims were not preempted). When parties bargain for the distribution of duties by contract, suits to enforce such contracts protect rather than hinder "competitive market forces." To the extent that UFP's claims are based on duties created by contract, the FAAAA does not preempt UFP's claims.

Second, Landstar claims that UFP's indemnification and contribution claims should be denied as a matter of law. UFP argues that if it is found liable to Thompson: (1) its contract with Landstar imposed a contractual duty upon Landstar to exercise due diligence in procuring appropriate carriers, (2) Landstar failed to exercise the required due diligence, and (3) because of that failure, Landstar is either primarily or jointly responsible for the dangerous condition that harmed plaintiff. UFP only specifically cites the Shipper/Broker Agreement contract as the source of Landstar's duties, though some laws and regulations were contractually incorporated.

Because UFP's claims against Landstar are grounded in the Shipper/Broker Agreement, the court must analyze the language of the contract, which according to its terms, is controlled by the laws of Michigan. "The goal of contract interpretation is to read the document as a whole and apply the plain language used in order to honor the intent of the parties." Greenville Lafayette, LLC v. Elgin State Bank, --- N.W.2d ----, 2012 WL 1319417, at *4 (Mich. App. Ct. Apr. 17, 2012). "[C]ourts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity." Klapp v. United Ins. Group Agency, Inc., 663 N.W.2d 447, 453 (Mich. 2003). The meaning of a term is a question of law when its language is unambiguous. Conagra, Inc. v. Farmers State Bank, 602 N.W.2d 390, 401 (Mich. Ct. App. 1999).

The Shipper/Broker Agreement states:

> General. Broker agrees, as an independent contractor, to exercise due diligence in arranging with properly licensed and qualified motor carriers to safely, promptly, and efficiently: (a) transport all of UFP's shipments tendered to it for transportation hereunder in accord with UFP's instructions . . .
> . . .

7

>Equipment and Drivers. In performing its obligations under this Contract, Broker shall arrange for UFP's product(s) to be transported only by carriers whose equipment, drivers and related practices are in compliance with all laws and regulations governing the provisions of motor carrier transportation services including without limitation the Federal Motor Carriers Safety Regulations at 49 C.F.R. parts 382 through 399 (FMCRs) . . .
>    . . . .
>Loading. Regardless of whether the loading is accomplished by UFP or by the carrier which Broker has arranged, said carrier shall be responsible for inspecting and testing the load of the shipment onto the carrier's equipment and determining whether such loading has been accomplished in a safe and legal manner.
>    . . . .
>Broker's Responsibility. Broker shall . . . arrange transportation of UFP's product(s) only by such motor carriers as it has determined after exercising due diligence are in compliance with federal, state, and local laws, ordinances, rules and regulations pertaining to the transportation, maintenance and operation of motor vehicles and equipment and other services provided under this Contract, including, without limitations to the FMCRS.

The "Loading" paragraph plainly states that even if UFP loads its goods, the carrier will be responsible for inspecting and testing the load. The other quoted sections also plainly state that Landstar will exercise due diligence to procure carriers who comply with laws and regulations and transport goods in accordance with UFP's instructions. If Landstar failed to comply with its contractual duties, it could be at least partially responsible for the creation of the allegedly dangerous situation that harmed Thompson.

However, the contract also contains an indemnity provision which states:

>Broker agrees to indemnify, defend and save harmless UFP. . . from any and all costs, expenses, damages, liens, charges, claims, demands or liabilities whatsoever (in this section referred to as 'claim') arising out of or in any matter connected with or resulting from Broker's acts or omissions in fulfilling its obligations under this Agreement and which are not attributable to the *active negligence* of UFP, which may be asserted by any third party whomsoever, including but not limited to . . . the carriers on whose lines it arranges transportation of UFP's product(s).

While active negligence is not a common term in South Carolina, it appears to be frequently used in Michigan. This provision of the contract mirrors the default rules for indemnification and active negligence in Michigan.

> Under Michigan law, it is well established that a party seeking indemnification from another must be free from active negligence. Active negligence arises from a party's breach of duty owed to another that was the proximate cause of injury; passive negligence, on the other hand, is negligence attributable solely to another such that the liability arises by operation of law. The majority of Michigan courts hold that if the primary complaint alleges active negligence against a party, then that party is not entitled to indemnification.

Girard v. Great Am. Lines, Inc., 181 F.3d 101 (6th Cir. 1999) (unpublished) (internal citations omitted). Thus, under either Michigan law or the terms of the contract, UFP's indemnification claim is barred because the Thompson complaint alleges that UFP was actively negligent.

UFP's claim for contribution, however, is not foreclosed by the contract. Furthermore, by permitting contribution, this court reads every provision in the contract to have an effect. But for permitting recovery for contribution, the "Loading" section would be useless. In Michigan, contracts must be read as a whole, giving effect to the entirety of the document. According to UFP, Landstar breached its contractual duties to UFP by failing to exercise due diligence in providing a carrier who would comply with the laws and contract by inspecting the load, even if UFP loaded the cargo, which will always result in active negligence if done improperly.

Allegedly, UFP's reliance on Landstar's promises, and Landstar's breach of those promises, contributed to the dangerous condition which harmed plaintiff. Because there are genuine issues of material fact regarding whether Landstar fulfilled its contractual obligations, whether its alleged failure contributed to plaintiff's

injuries, and whether equity requires that Landstar contribute to plaintiffs' damages based on its alleged breach of contract to UFP, this court denies Landstar's motion for summary judgment on UFP's contribution claim.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** third-party defendants' motions to strike and Landstar's motion for summary judgment on the contribution claim, but **GRANTS** Landstar's motion for summary judgment on UFP's indemnification claim.

**AND IT IS SO ORDERED**.

　
_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 24, 2012**
**Charleston, South Carolina**